IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE D. MILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.: 08-CV-3752 |
| ) | |
| BNSF RAILWAY COMPANY ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S EMERGENCY MOTION TO RECONSIDER OR IN THE ALTERNATIVE AMEND THE JUDGMENT**

COMES NOW Plaintiff, Terrance D. Millard, by and through his attorneys, Holland, Groves, Schneller & Stolze, L.L.C., and for his Motion to Reconsider or in the Alternative Amend the Judgment, states as follows:

1. The Court dismissed this case for administrative filing error for failure to include the attorney appearance. See Document # 7.

2. Plaintiff's statute of limitations potentially expired July 11, 2008.

3. As such, the Court's dismissal without prejudice of this case may essentially render it a dismissal with prejudice.

4. Plaintiff files this motion to reinstate the original case as of the date originally filed, July 1, 2008.

5. Plaintiff's Complaint was timely filed on July 1, 2008 and the filing fee was paid. See Complaint (Document # 1).

6. The civil cover sheet was filed with the Complaint. See Civil Cover Sheet

1

(Document # 2).

7. The attorney appearance forms and the summons were not attached to the Complaint as Plaintiff was waiting to file these with a case number as he had been told to do by the Office of the Clerk of Court. See Exhibit 1, Affidavit of Mike Gerleman.

8. When Plaintiff did not receive confirmation upon filing the case with a case number, Plaintiff contacted the Office of the Clerk of Court on the same date of filing, July 1, 2008, in order to obtain a case number to file the attorney appearance forms and summons. See Exhibit 1.

9. The Office of the Clerk of Court told Plaintiff on July 1, 2008 that he would have to wait 24-48 hours to be issued a case number so it could be entered in to the system. See Exhibit 1.

10. Based upon this conversation with the Office of the Clerk of Court, it was Plaintiff's understanding that the attorney appearance forms and summons could be filed upon assignment of a number. See Exhibit 1.

11. Upon receiving the case number, Plaintiff filed the attorney appearance forms. See Exhibit 1.

12. Plaintiff contacted the Office of the Clerk of Court again regarding issuance of the summons. See Exhibit 1.

13. The Office of the Clerk of Court told Plaintiff that he could file it via the Court's email address. See Exhibit 1.

14. Plaintiff emailed the summons to the Office of the Clerk of Court and a certified summons was issued by the Clerk. See Exhibit 1.

15. The Office of the Clerk of Court never indicated that anything was wrong with filing the case in this manner nor warned Plaintiff that the case could be dismissed. See Exhibit 1.

16. Upon receipt of the summons, Plaintiff served the Complaint on the Defendant.

17. On July 14, 2008, Plaintiff received the dismissal without prejudice for failure to complete the civil cover sheet and for failure to file attorney appearance forms. See Docket Entry Text (Document # 7).

18. The docket entry is dated July 01, 2008. This date is crossed out and is hand dated July 10, 2008. See Document 7.

19. Plaintiff did not receive the entry until July 14, 2008 at 4:24 p.m. See Exhibit 2, Email notification regarding Document 7; Exhibit 3, Pacer History noting filed date of 07/10/2008 and entered date of 07/14/2008.

20. This action was dismissed for failure to complete the civil cover sheet and failure to file attorney appearance forms. See Document 7.

21. Plaintiff believes that he correctly filed the Civil Cover Sheet. See Document 2.

22. Plaintiff filed the attorney appearance forms one day later upon receipt of the case number. See Documents # 4-5.

23. Any misfiling of the attorney appearance forms or civil cover sheet are minor administrative filing requirements that do not warrant the harsh sanction of dismissal of this action without giving counsel a warning or opportunity to remedy the mistake, inadvertence, or excusable neglect. See Total Energy Corp. v. Stolt, 334 F.Supp.2d 413 (S.D. N.Y. 2004) (improperly filed civil cover sheet with removal); Gabriel v. Hamlin, 514 F.3d 734 (7th Cir. 2008) (procedural mistakes or misconduct during discovery or trial); Bolt v. Loy, 227 F.3d 854 (7th Cir. 2000) (same); Kruger v. Apfel, 214 F.3d 784 (7th Cir. 2000) (same); Graham v. Schomaker, 215 F.3d 1329, 2000 WL 717093 (7th Cir. 2000) (courtesy copy attached hereto as Exhibit 4) (same); Matter of Bluestein &

Co., 68 F.3d 1022 (7th Cir. 1994); Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993) (same); Cintron v. Union Pacific R.R. Co., 813 F.2d 917 (1987) (same); See also Fed.R.Civ.P. 59(e), 60(a), 60(b)(1) and 60(b)(6).

24.	Substantial justice necessitates the granting of this motion.

WHEREFORE Plaintiff, Terrance D. Millard, respectfully requests that this Honorable Court reinstate this case as of the date originally filed. Alternatively, counsel requests that the Court give a less severe sanction for any misfiling of the civil cover sheet or attorney appearance forms and for any further relief that this Court deems just and proper.

       HOLLAND, GROVES, SCHNELLER
       & STOLZE, L.L.C.


       s/ Ryan M. Furniss
       Ryan M. Furniss IL #6282915
       Eric D. Holland IL # 06207110
       300 N. Tucker Blvd., Suite 801
       St. Louis, MO 63101
       314/241-8111
       314/241-5554 - Facsimile
       rfurniss@allfela.com
       eholland@allfela.com

       -   AND   -

       COONEY & CONWAY
       Robert J. Cooney, Jr. IL # 6205863
       120 N. LaSalle Street, Suite 30
       Chicago, IL 60602
       Local Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE D. MILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No.: 08-CV-3752 |
| | ) |
| BNSF RAILWAY COMPANY | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF MICHAEL GERLEMAN

COMES NOW Michael Gerleman, your affiant, and under oath states as follows:

1. I am over the age of eighteen (18) and otherwise competent to testify to all facts and/or opinions contained in this Affidavit.

2. That the facts and/or opinions contained in this Affidavit are made upon personal knowledge and true to the best of my knowledge, information, and belief.

3. That I am the assistant for Plaintiff's counsel.

4. The filing of the attorney appearance forms and the summons were not attached to the Complaint as Plaintiff was waiting to file these with a case number as I had been told by the Office of the Clerk of Court.

5. When we did not receive the confirmation upon filing the case with a case number, I contacted the Office of the Clerk of Court on the same date of filing, July 1, 2008, in order to obtain a case number to file the attorney appearance forms and the summons.

6. The Office of the Clerk of Court told me on July 1, 2008 that I would have to wait 24-48 hours to be issued a case number so it could be entered in to the system.

1


PLAINTIFF'S EXHIBIT 1

7.  Based upon this conversation with the Office of the Clerk of Court, it was my understanding that the attorney appearance forms and summons could be filed upon assignment of a number.

8.  Upon receiving the case number, Plaintiff filed the attorney appearance forms.

9.  I contacted the Office of the Clerk of Court again regarding issuance of the summons.

10. The Clerk of Court told me that I could file it via the Court's email address.

11. I emailed the summons to the Clerk of Court and a certified summons was issued by the Clerk.

12. The Office of the Clerk of Court never indicated that anything was wrong with filing the case in this manner or warned this office that the case could be dismissed.

FURTHER AFFIANT SAYETH NOT.

Michael Gerleman

Subscribed and sworn to before me, a notary public, this 15th day of July, 2008.

Notary Public

My Commission Expires:

7-31-09

"OFFICIAL SEAL"
SHARON L. RYAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/31/09

**Ryan Furniss**

From: usdc_ecf_ilnd@ilnd.uscourts.gov
Sent: Monday, July 14, 2008 4:31 PM
To: ecfmail_ilnd@ilnd.uscourts.gov
Subject: Activity in Case 1:08-cv-03752 Millard v. BNSF Railway Company terminated case

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

Northern District of Illinois - CM/ECF LIVE, Ver 3.2.1

**Notice of Electronic Filing**

The following transaction was entered on 7/14/2008 at 4:24 PM CDT and filed on 7/10/2008
**Case Name:** Millard v. BNSF Railway Company
**Case Number:** 1:08-cv-3752
**Filer:**
**WARNING: CASE CLOSED on 07/10/2008**
**Document Number:** 7

**Docket Text:**
**MINUTE entry before the Honorable Suzanne B. Conlon:This case is dismissed without prejudice for failure to complete the civil cover sheet and for failure to file attorney appearance forms. Civil case terminated. Notices mailed by Judicial staff. (wyh, )**

1:08-cv-3752 Notice has been electronically mailed to:

Eric D. Holland    eholland@allfela.com

Ryan M. Furniss    rfurniss@allfela.com

1:08-cv-3752 Notice has been delivered by other means to:



7/14/2008

**1:08-cv-03752** Millard v. BNSF Railway Company
Suzanne B. Conlon, presiding
Date filed: 07/02/2008
Date terminated: 07/10/2008
Date of last filing: 07/10/2008

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* *Entered:* | 07/01/2008 07/02/2008 | complaint |
| 2 | *Filed:* *Entered:* | 07/01/2008 07/02/2008 | civil cover sheet |
| 4 | *Filed & Entered:* | 07/02/2008 | attorney appearance |
| 5 | *Filed & Entered:* | 07/02/2008 | attorney appearance |
| 6 | *Filed:* *Entered:* | 07/02/2008 07/03/2008 | summons issued |
| 7 | *Filed:* *Entered:* | 07/10/2008 07/14/2008 | terminated case |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/14/2008 23:31:07 | | | |
| **PACER Login:** | hg0445 | **Client Code:** | Millard |
| **Description:** | History/Documents | **Search Criteria:** | 1:08-cv-03752 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |


PLAINTIFF'S EXHIBIT 3

# Westlaw.

215 F.3d 1329
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))
**(Cite as: 215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.)))**

Page 1

Graham v. Schomaker
C.A.7 (Ind.),2000.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Seventh Circuit.
Gene V. GRAHAM, Plaintiff-Appellant,
v.
Carolyn SCHOMAKER, et al., Defendants-Appellees.
No. 99-1564.

Argued April 26, 2000.
Decided May 31, 2000.

Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 3:93-CV-0005RM. Robert L. Miller, Jr., Judge.

Before Hon. WILLIAM J. BAUER, Hon. ILANA DIAMOND ROVNER, Hon. DIANE P. WOOD, Circuit Judges.

ORDER

*1 Gene V. Graham, a pro se litigant, appeals the district court's dismissal of his suit on the eve of trial and after six years of pretrial preparation. The district court apparently dismissed the suit as a sanction for Graham's failure to meet financial liabilities related to the subpoenaing of witnesses and the copying of records. Because the district court abused its discretion in imposing this extreme sanction, we vacate and remand.

I.

In January 1993, Graham, at that time an Indiana state prisoner, brought a pro se action under 42 U.S.C. § 1983 against the defendants, employees of the Indiana Department of Corrections. He alleged primarily that the defendants violated his constitutional rights by denying him a medically-prescribed diet. At the October 16, 1998, final pretrial conference, the district court set a jury trial date for December 7, 1998, expecting the trial to last three days. On October 28, 1998, the district court ordered the Superintendent of Pendleton Correctional Facility ("PCF") to afford Graham access to his medical records "on a date convenient to [Graham] and facility officials on or before 11/10/98 and allow plaintiff to make copies of all or portions of his records at his own expense."

On November 16, 1998, Graham requested the district court to subpoena nine people to appear at the December trial. One week later, the district court directed Graham, who was no longer incarcerated, to transmit the subpoenas to the witnesses on his own. In its written order, the court noted the Fed.R.Civ.P. 45(b) requirements for the delivery of a subpoena and the 28 U.S.C. § 1821 requirements for witness fees. On December 1, 1998, Graham had nine subpoenas delivered to witnesses; however, two subpoenas remained undelivered because two witnesses could not be located. With each subpoena, Graham sent a personal check for $146.00, dated November 30, 1998, and drawn on a Standard Federal Bank ("SFB") account.[FN1]

> FN1. Witness fees for a witness's attendance at Graham's trial for one day would be only $66.00; Graham mistakenly allotted more than twice that amount for each witness.

The defendants' counsel, skeptical that Graham had sufficient funds to satisfy the check amounts, asked its investigator to contact the bank. The investigator's telephone calls to SFB revealed that on December 1, 1998, and on December 2, 1998, Graham's account did not contain the $1,314.00 necessary to cover all nine of the checks. Consequently, on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



PLAINTIFF'S EXHIBIT 4

215 F.3d 1329
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))
(Cite as: 215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.)))

Page 2

December 3, 1998, the defendants filed a motion to quash and to request sanctions on behalf of the seven witnesses who received the subpoenas. Their motion also alleged that Graham had caused copies of his medical records to be made at PCF and never paid for them.

Also on December 3, 1998, the district court vacated the December 7, 1998, trial date and set a scheduling conference for December 11, 1998. In a separate December 3 order, the district court directed Graham to respond to defendants' motion by December 14. That order further stated that "sanctions, if imposed, could include dismissal of the case." On December 4, Graham filed his response. He presented a copy of a SFB transaction receipt, dated December 4, 1998, and showing a $270.00 deposit into the same account as that on which the subpoena checks had been drawn. The receipt showed that the pre-deposit balance of that account was $1,057.86.

*2 At the December 11 conference, the district court judge began by explaining that he had vacated the December 7 trial date because the courtroom he had scheduled was unavailable. He then said that after he decided to vacate the trial date, he was presented with another possible reason that the trial date should be postponed-the charges of Graham's misconduct raised in defendants' motion. Next, the judge questioned Graham regarding defendants' motion. Graham responded that he had sufficient funds to cover the checks-and if he did not, then the overdraft protection on his account would allow for checks to still be honored. The defendants requested additional time to respond to Graham's assertions because they were unaware that Graham had overdraft protection. The court gave the defendants ten days to supplement their motion and set December 30, 1998, as the deadline for Graham's response to any further submissions from the defendants. At the end of the conference, the court set February 22, 1999, as the new trial date. Between December 11 and December 21, the defendants deposed the manager of SFB's South Bend branch and filed a supplement to their December 3 motion. In their supplement, they argued that even with his $300 overdraft protection, Graham's funds still would be insufficient to cover all nine of his checks to the witnesses. Graham did not file a response to this supplement.

On January 19, 1999, the district court granted defendants' motion and dismissed Graham's case with prejudice. In its order, the court stated that it had vacated the December 7 trial date because defendants' motion suggested Graham had acted inappropriately so near to the trial date, both by writing bad checks and by not paying for several hundred pages of medical records he had requested the PCF to copy.[FN2] After detailing the amounts in Graham's checking account for the period December 1-4, 1998,[FN3] the court determined that two of the nine checks would not have been honored had they been presented during the first three days of that period. The court concluded that "[n]o court should have a part in seeing its orders to appear accompanied by a 22% chance that the check for attendance will bounce." The court stated that because Graham's check-writing conduct had caused him to vacate the December 7 trial date, Graham did not deserve to have his case rescheduled.

> FN2. Although the defendants alleged in their motion that Graham had caused PCF personnel to copy his medical records and then didn't pay for those copies, the record contains no details about how many pages were copied or how much the copying cost. In addition, the record contains no evidence that Graham requested that PCF copy his records. In Graham's Rule 59 motion he explained that PCF made his records available for his inspection only during hours when he was at work. Graham could not change his work schedule and PCF would not release copies of the records to anyone but him. Therefore, he stated, because he could not comply with the court's November 10 deadline for se-

215 F.3d 1329   Page 3
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))
**(Cite as: 215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.)))**

curing copies of the records, he pursued the matter no further once the deadline passed.

FN3. Graham's balances for those four days were as follows (the balance plus the $300 overdraft protection is listed in parentheses after the balance amount): Dec. 1 $857.86 ($1,157.86); Dec. 2 $787.87 ($1,087.86); Dec. 3 balance was unchanged from Dec. 2; Dec. 4 $1,037.86 ($1,337.86).

Graham filed a timely motion to alter the judgment pursuant to Fed.R.Civ.P. 59. The district court denied the motion, finding that it presented new arguments. The court stated that Graham missed the opportunity to present such arguments when he failed to submit by the December 30 deadline a response to defendants's supplement to their motion to quash. In April 1999, the court granted the defendants' petition for $1,792.50 in costs and attorney fees. Graham filed no response to this petition. However, while the petition was pending, he filed his notice of appeal with this court.

II.

*3 On appeal, Graham argues that the district court wrongly dismissed his suit. He maintains that his checks could not be considered backed by insufficient funds until SFB refused to honor them. And, since he honestly believed that his account could cover the checks and none of the witnesses ever attempted to cash his checks, the district court punished him for misconduct that never occurred. Graham further argues that dismissal was improper because the district court erred when it: 1) failed to recognize that only seven witnesses actually received the checks; 2) failed to provide proper notice that it would dismiss his case; 3) punished him for his attempt to get copies of his records from PCF even though he complied with the terms of the court's October 28, 1998 order.

We examine the district court's decision in the context of the two most plausible legal bases: 1) the "inherent powers" doctrine and 2) Fed.R.Civ.P. 41(b). We do so because in its dismissal order the district court failed to cite any rule of civil procedure or case law to support its decision. In addition, the appellees cite no case law to support their arguments.

We review a district court's imposition of dismissal as a sanction for abuse of discretion. *See Williams v. Chicago Bd. of Educ.,* 155 F.3d 853, 857 (7th Cir.1998). We apply the same standard of review to cases where the district court orders involuntary dismissal of a suit with prejudice. *See Federal Election Comm'n v. Al Salvi for Senate Comm.,* 205 F.3d 1015 (7th Cir.2000). We will find an abuse of discretion if the district court's decision strikes the court as "fundamentally wrong," *id.* at 857, or if the district court acted "precipitately, willfully, [or] unreasonably ... [such that] it is plain either that the dismissal was a mistake or that the judge did not consider factors essential to the exercise of a sound discretion."*Ball v. City of Chicago,* 2 F.3d 752, 755 (7th Cir.1993).

A. *Inherent powers*

Federal courts have inherent power to punish conduct that abuses the judicial process. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). Generally, the district courts possess discretion to craft sanctions because the power to sanction is essential for them to manage heavy caseloads and to protect the interests of the litigants. *See, e.g., Salgado v. General Motors Corp.,* 150 F.3d 735, 739 (7th Cir.1998); *In the Matter of Scheri,* 51 F.3d 71, 75 (7th Cir.1995).

Nonetheless, the punishment in Graham's case exceeded the perceived misconduct. Federal courts, though they possess inherent powers, must exercise these powers with restraint. *See Chambers,* 501 U.S. at 43-44;*Diettrich v. Northwest Airlines, Inc.,* 168 F.3d 961, 964 (7th Cir.1999). Dismissal is a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

215 F.3d 1329
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))
(Cite as: 215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.)))

Page 4

very severe sanction, which district courts should impose only in extreme circumstances. *See, e.g., Kovilic Constr. Co., Inc. v. Missbrenner,* 106 F.3d 768, 773-74 (7th Cir.1997); *English v. Cowell,* 969 F.2d 465, 473 (7th Cir.1992). In fact, it should be the sanction of last resort, the "ultimate sanction." *Diettrich,* 168 F.3d at 964. Before imposing such a sanction, the district court should consider whether the other party has been prejudiced by the misconduct, whether the sanction is proportionate to the transgression, and whether the misconduct is abusive to the judicial process. *Id.* at 964-65. Importantly, the court should first consider the adequacy of a less severe sanction. *See Oliver v. Gramley,* 200 F.3d 465, 466 (7th Cir.1999); *Dunphy v. McKee,* 134 F.3d 1297, 1301-1302 (7th Cir.1998). Courts need not consider lesser sanctions, however, in situations where the misconduct is "so egregious, inexcusable, and destructive that no lesser sanction than dismissal with prejudice could be adequate."*Oliver,* 200 F.3d at 466 (discussing inherent powers and dismissal as a sanction in a case of fraud on the court).

*4 Here, the district court did not explain why lesser sanctions would be inadequate to punish Graham for his check-writing conduct or his failure to pay for copies. This court requires such an explanation. *See, e.g., Dunphy,* 14 F.3d at 1302;*Schilling v. Walworth County Park & Planning Comm'n,* 805 F.2d 272, 278 (7th Cir.1986). Moreover, Graham's misconduct fails to rise to the level of egregiousness required for the court to avoid undertaking the lesser-sanctions analysis. *Compare Oliver,* 200 F.3d at 466 (misconduct was "criminal in character" and destroyed a "legitimate and dispositive" defense).

Further, Graham's misconduct neither prejudiced the defendants nor abused the judicial process. He did not unduly delay the proceedings; the district court had already changed the December 7 trial date for reasons unrelated to Graham's litigation. His conduct was not extreme enough to amount to abuse of the court and its process. *Compare Chambers,* 501 U.S. at 46 (fraud on the court or similar action that causes the "very temple of justice [to be] defiled"); *Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir.1993) (engaging in pattern of frivolous litigation); *Glick v. Gutbrod,* 782 F.2d 754, 756-57 (7th Cir.1986) (vexatious claims and contumacious conduct).

B. *Involuntary dismissal under Rule 41(b)*

The district court might have viewed the situation as one where Graham failed to comply with its October 1998 and November 1998 orders regarding his issuing of subpoenas and his access to and copying of records housed at PCF. As such, we could construe the district court's decision as an involuntary dismissal pursuant to Fed.R.Civ.P. 41(b).FN4

> FN4.Rule 41(b) states in relevant part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action ... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits."

A Rule 41(b) dismissal is a "drastic remedy." *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.,* 201 F.3d 948, 953 (7th Cir.2000). There is a presumption, especially in a civil rights tort suit, that the district court should decide a case on its merits. *Id.* at 757, 759-60. Before the district court imposes a Rule 41(b) dismissal, it must consider five factors: 1) whether the wrongdoer (or her counsel) received "due warning" that such a sanction was a possibility; 2) the frequency and magnitude of the wrongdoer's failure to comply with deadlines and other court orders; 3) the efficacy of less severe sanctions; 4) whether the misconduct prejudiced the other party or other litigants on the court's docket; 5) the likely merits of the wrongdoer's case. *See Ball,* 2 F.3d at 755-58.

Here, the district court neglected to follow our

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

215 F.3d 1329  
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))  
**(Cite as: 215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.)))**

Page 5

guidelines for a Rule 41(b) dismissal. The court's dismissal order fails to show us that the court considered two of the five required factors-the adequacy of lesser sanctions or the lack of prejudice to the defendants. Further, the record dispels any concern about the fifth factor, the merits of Graham's suit. The district court denied defendants' earlier motion to dismiss and was planning to allow the case to proceed to trial.

*5 Next, we believe that Graham received inadequate warning that dismissal of his case was a possible sanction. The district court must explicitly warn of the consequences of a specific action, *see In the matter of Bluestein,* 68 F.3d 1022, 1027 (7th Cir.1995), especially when, as here, one of the parties is proceeding pro se, *see Dunphy,* 134 F.3d at 1301;*Schilling,* 805 F.2d at 277-78. The district court warned Graham that his case could be dismissed-but it did so only in its December 3, 1998 order which informed Graham of the deadlines for his response to the defendants' motion to quash the subpoenas. The district court issued its warning at a time when it was least effective; Graham had already issued his checks and not retrieved the copies from PCF. At that point, Graham no longer could control his conduct to avoid the sanction of dismissal-his honest answers to the court's queries could not and did not eradicate the possibility, central to the district court's dismissal decision, that two checks might not have been honored if presented to the SFB.

Moreover, the record is devoid of any evidence that Graham had ever previously been reprimanded or sanctioned for any other misconduct in this case in the six years prior to dismissal. Thus, it cannot be said that Graham should have known that his actions warranted dismissal as a sanction. *See Williams,* 155 F.3d at 857 (dismissal with prejudice warranted when less drastic sanctions have "proven unavailing").

Finally, the district court's dismissal order dispelled any concern that Graham might have willfully acted to disobey court orders. The district court did not find that Graham acted in bad faith either in writing the checks or in not retrieving the copies from PCF. In fact, the court acknowledged that Graham may have honestly believed his checks would be honored.

### III.

Under either of the possible legal bases for its decision, the district court failed to consider the factors necessary for the exercise of its sound discretion. The district court's use of the ultimate sanction of dismissal with prejudice exceeded the bounds of its discretion. Accordingly, we VACATE the district court's sanction of dismissal and REMAND the case for trial.

C.A.7 (Ind.),2000.  
Graham v. Schomaker  
215 F.3d 1329, 2000 WL 717093 (C.A.7 (Ind.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.