IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE D. MILLARD, | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No.: 08 C 3752 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| BNSF RAILWAY COMPANY, | ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Terrance D. Millard sues his employer BNSF Railway Company ("BNSF") under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Millard alleges BNSF interfered with his right to take FMLA leave to care for his asthmatic son. BNSF moves for summary judgment. For the reasons set forth below, the motion is denied.

### BACKGROUND

**I.    Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 numbered paragraphs; each paragraph must identify affidavits, parts of the record, and other supporting materials relied upon. Local Rule 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. Local Rule 56.1(b)(3). The opposing party may also submit a statement of supplemental

material facts, not to exceed 40, that require summary judgment denial. Local Rule 56.1(b)(3)(C).

## II. Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Millard is a BNSF train conductor. In August 2005, BNSF granted Millard's request for intermittent FMLA leave for the time period October 2005 to October 2006 to care for his asthmatic toddler son Jaylen Millard. Jaylen's doctor, Azra Sheriff, M.D., certified the request. Dr. Sheriff stated Jaylen's asthma flares up periodically; the duration of his condition is unpredictable; and his incapacity lasts a few days at a time. Def. Facts, Ex. D(1), FMLA Health Care Provider Certification. When Jaylen's asthma flares up, he needs additional medication and more frequent nebulizer treatments. Def. Facts, Ex. D., Dr. Sheriff Dep. Tr. at 8, 14.

On January 16, 2006, BNSF contacted Dr. Sheriff without Millard's authorization to request clarification of his need for FMLA leave. BNSF informed Dr. Sheriff that Millard took 79 FMLA days in 2005. Dr. Sheriff responded that she expected Millard to take FMLA leave once a month, three to seven days in duration. Def. Facts, Ex. D(2), BNSF/Dr. Sheriff Correspondence. Millard subsequently took 65 days off as FMLA leave within a three-month time period: 20 days in February 2006, 24 days in March 2006, and 21 days in April 2006. Def. Facts, Ex. F, Jason R. Ringstad (BNSF Employee Performance Director) Aff. ¶ 7.

In January and March 2006, BNSF informed Millard his FMLA usage pattern was unusual, and directed him to contact human resources with updated information. Def. Facts, Ex. G, Robert McConaughey (BNSF Acting General Manger) Aff. ¶¶ 9, 13. Millard did not provide human resources with updated information. Def. Facts ¶ 23; Pl. Facts ¶ 23.

2

BNSF conducted an investigative hearing, pursuant to the collective bargaining agreement terms, to determine whether Millard abused FMLA leave. BNSF's labor relations director Ringstad reviewed the investigative record and recommended Millard' termination to BNSF's acting general manger McConaughey. Ringstad Aff. ¶ 16. McConaughey reviewed the administrative record and terminated Millard for violating company rules against dishonesty and failure to meet attendance requirements. McConaughey Aff. ¶¶ 17, 19. Millard appealed his dismissal to the Public Law Board. The Board found substantial evidence to support Millard's FMLA abuse, but found dismissal excessive and ordered him reinstated. Ringstad Aff., Ex. 4, Public Law Board Decision.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of

3

material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     FMLA Interference

BNSF argues Millard used FMLA leave for the inappropriate purpose of babysitting Jaylen and taking him to doctors' appointments, not to care for Jaylen's asthma flare-ups. The FMLA provides eligible employees up to twelve weeks of unpaid leave in a twelve-month period to care for a child with a serious health condition. 29 U.S.C. § 2612(a)(1); *Moldenhauer v. Tazewell-Pekin Consol. Comms. Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008). The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of or attempt to exercise FMLA rights, including the right to reinstatement upon return from leave. 29 U.S.C. §§ 2614(a) 2615(a)(1); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

To prove an interference claim, Millard must show he is eligible for FMLA protection; BNSF is a covered employer under the FMLA; he is entitled to FMLA leave; he provided sufficient notice of his intent to take leave; and BNSF denied him benefits to which he is entitled. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). An employer may defeat an FMLA interference claim by showing the employee used FMLA leave for an unintended purpose. *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008).

BNSF argues Millard used FMLA for an unintended purpose. It contends it is entitled to summary judgment because Millard is estopped from contesting the Public Law Board's finding that Millard abused FMLA leave. An arbitral decision does not bar court action to enforce a congressionally created and judicially enforceable statutory right. *See Kulavic v. Chicago & Ill. Midland Rwy. Co.*, 1 F.3d 507, 514-15 (7th Cir. 1993) (arbitral decision upholding Kulavic's

4

termination did not preclude his Federal Employers' Liability Act claim). Millard's FMLA claim is not precluded by the Public Law Board's decision.

The parties agree that Millard was certified to take FMLA leave to care for Jaylen's asthma flare-ups. But they dispute whether Millard used FMLA leave for that purpose. Millard admits he used FMLA leave on March 21, 2006 to bring Jaylen to Dr. Sheriff for treatment of ringworm – a condition unrelated to Jaylen's asthma. Def. Facts ¶ 15; Dr. Sheriff Dep. Tr. at 29, 33; Pl. Resp. ¶ 15. Dr. Sheriff testified Jaylen's asthma was not exacerbated that day; she only treated him for ringworm. Dr. Sheriff Dep. Tr. at 29, 33. Millard attests he was required to administer three to five nebulizer treatments to Jaylen that day. Pl. Facts, Ex. 2, Millard Aff. ¶ 24. Millard admits he used FMLA leave on March 23, 2006 to bring his son to Youngran Chung, M.D., a pediatric pulmonologist. Def. Facts ¶ 17, Ex. E, Dr. Chung Dep. Tr. at 4-5, 22-23; Pl. Resp. ¶ 17. Dr. Chung testified she examined Jaylen that day, and that he was healthy with no evidence of asthma flare-ups. Chung Dep. Tr. at 22-23. But the purpose of Dr. Chung's examination was to establish a plan to minimize Jaylen's asthma flare-ups. *Id.* at 5, 28.

When questioned whether he ever used FMLA leave because he could not get a babysitter, Millard testified "[y]es, there [*sic*] would be a day that I could use FMLA." Def. Facts, Ex. C, Millard Dep. Tr. at 154. But he also testified that "all of the days that I took were FMLA days, and the FMLA days that I took means I was taking care of my son." *Id.* at 151. Millard explained that if Jaylen's asthma was exacerbated, and a "reasonable person or an adult" was not available to babysit his son, then he would take FMLA leave. *Id.* at 152. Millard's testimony implicates credibility issues. But viewing the evidence in Millard's favor, there is a

5

genuine issue of material fact whether he used FMLA leave for purposes other than caring for Jaylen's asthma flare-ups.

BNSF argues it did not violate the FMLA because it fired Millard based on its honest suspicion that he was abusing his leave. Millard argues BNSF's honest suspicion is irrelevant to an FMLA interference claim. The cases upon which Millard relies state that an employee need not prove discriminatory or retaliatory intent to establish an FMLA interference claim, as opposed to an FMLA retaliation claim. *E.g., Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 953 (7th Cir. 2006); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1017 (7th Cir. 2000).

BNSF does not argue Millard must establish discriminatory or retaliatory intent. Rather, BNSF argues its honest suspicion that Millard was abusing FMLA leave precludes Millard's FMLA interference claim. An employer may defeat an FMLA interference claim by showing the employee did not take leave for the intended purpose. This has been interpreted to mean that an employer does not violate the FMLA if it refuses to reinstate an employee based on an honest suspicion that the employee abused his leave. *Vail*, 533 F.3d at 909-10; *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986-87 (7th Cir. 2006); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997).

In *Vail*, the employer Raybestos suspected Vail was using FMLA leave to assist her husband with his lawn-mowing business, rather than to care for her migraine headaches; she repeatedly requested leave in warm weather months during prime lawn-mowing hours. Raybestos fired Vail after it surveilled her mowing lawns while on FMLA leave. Vail sued Raybestos for interfering with her FMLA rights. 533 F.3d at 906-07. Summary judgment for

Raybestos was affirmed because Raybestos had an honest suspicion that Vail was using her FMLA leave for an unintended purpose. *Id.* at 909-10.

The evidence BNSF cites for its honest suspicion includes Dr. Sheriff's August 2005 certification that Millard needed to care for Jaylen's periodic, unpredictable asthma flare-ups. In early 2006, BNSF contacted Dr. Sheriff, without Millard's authorization, to clarify Millard's need for FMLA leave. Dr. Sheriff's expectation was that Millard would only take FMLA leave once a month, three to seven days in duration. Millard thereafter took 65 FMLA days in a three-month time period. BNSF's requests to Millard to provide more information about the purpose of his leave went unanswered.

Millard responds BNSF was precluded from forming an honest suspicion that he was abusing FMLA leave because it contacted Dr. Sheriff for clarification without Millard's permission in violation of FMLA regulation. When an employee submits the requisite doctor's certification to support his request for FMLA leave, the employer may not request additional information from the employee's doctor. Only a health care provider representing the employer may contact the employee's doctor, with the employee's permission, for clarification and authenticity of the certification. 29 C.F.R. § 825.307; *Darst*, 512 F.3d at 909-10.[1]

It is undisputed BNSF based its suspicion on information it learned from its unauthorized contact with Dr. Sheriff. But FMLA provides no remedy for the unauthorized contact with an

---

[1] The regulation was amended, effective January 16, 2009, to allow an employer to contact an employee's doctor to authenticate or clarify information in the certification. The amendment is inapplicable because it post-dates BNSF's unauthorized request to Dr. Sheriff. *Smith*, 560 F.3d at 698 n.4.

7

employee's doctor unless it interferes with or restrains the employee's FMLA rights. *Smith*, 560 F.3d at 698 n.4; *Darst*, 512 F.3d at 909-10.

In *Darst*, Darst sought treatment for alcoholism and was hospitalized. He was absent from work for three days prior to his hospitalization. His doctor certified to Darst's employer Interstate Brands his need for FMLA leave for the time period he was hospitalized and the preceding three work days. But the health insurance claim form submitted to Interstate Brands was signed by a different doctor and listed different dates. Interstate Brands' human resources manager contacted the hospital to clarify the hospitalization dates. Darst was fired for absenteeism based on the three days he was absent prior to his hospitalization and prior absences. 512 F.3d at 905-07. He sued Interstate Brands for interfering with his FMLA rights.

Summary judgment in favor of Interstate Brands was affirmed, *inter alia*, because FMLA provides no remedy for the unauthorized contact with Darst's doctor unless it interfered with his FMLA rights. Darst presented no evidence he received covered treatment on the three days preceding his hospitalization. Interstate Brands could not have interfered with Darst's FMLA rights if he had no right to FMLA leave on the days in question. *Id.* at 909-10.

Whether BNSF interfered with Millard's FMLA rights by contacting his doctor begs the disputed question of whether Millard used FMLA leave for an unintended purpose. There is a genuine issue of material fact whether Millard used FMLA leave to babysit his son and take him to doctor's appointments unrelated to his asthma condition. Under the circumstances, BNSF is not entitled to summary judgment based on its suspicion Millard was abusing FMLA leave. Summary judgment in favor of BNSF on Millard's FMLA interference claim is not warranted.

## CONCLUSION

BNSF's summary judgment motion is denied. There is a genuine issue of material fact whether Millard used FMLA leave for an unqualified purpose.

ENTER:

*[signature]*
Suzanne B. Conlon
United States District Judge

May 11, 2009