UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE D. MILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 3752 |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Terrance D. Millard ("Millard") brought this action against defendant BNSF Railway Company ("BNSF") alleging interference with his right to take reasonable leave to care for his ill child under the Family and Medical Leave Act ("FMLA.") (Compl.) [Dkt 1]. The parties have consented to the exercise of jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). [Dkt 46, 50.] BNSF has filed a Motion to Enforce Settlement Agreement, alleging that the case has been settled for $80,000. (Def.'s Mot. ¶¶ 6, 7, 11.) [Dkt 96.] Millard disputes the enforceability of the agreement, alleging he never provided his attorney, Ryan Furniss ("Furniss"), with authority to settle for $80,000, and that Furniss failed to notify him prior to making the settlement demand. (Pl.'s Resp. ¶¶ 3,7.) [Dkt 100.] The parties submitted briefs on the issue and an evidentiary hearing was held on the motion.[1] For the reasons set out below, BNSF's motion is granted.

---

[1] An official transcript of the evidentiary hearing was not ordered by either party.

-1-

**FACTUAL BACKGROUND**

The facts adduced from the parties' written submissions and the evidentiary hearing are summarized as follows. In their first attempt to settle the matter with a neutral third party, the parties, including Millard, engaged in mediation on June 26, 2009 for several hours before former Judge Thomas Durkin at ADR Mediation Services. Millard's attorney, Furniss, testified that BNSF made a final offer of $40,000 at the mediation, while Millard, through his attorney, made a final demand of $80,000. The demands and offers were based upon gross amounts, inclusive of costs and attorneys' fees. The mediation failed to yield a settlement agreement.[2]

After reassignment to this court, a jury trial was set for February 22, 2010. [Dkt 61.] Shortly before the final pretrial conference, the parties agreed to engage in a settlement conference on February 8, 2010 before Magistrate Judge Sidney Schenkier. (Def.'s Mot. ¶ 4; Pl.'s Resp. ¶ 1.) Present at the conference were Furniss, Millard, a representative of BNSF, and two attorneys for BNSF, Robert Prendergast ("Prendergast") and Daniel Mohan ("Mohan"). Furniss and Mohan both testified that the last demand Millard made on BNSF at the settlement conference was for $90,000.

Judge Schenkier recommended that the parties settle for $65,000, but Millard instantly rejected this figure. At that point, Furniss was troubled by the wisdom of his client's decision and composed a document stating that Furniss had encouraged Millard to accept $65,000 and that, if Millard did not accept, he was fully aware of the risks of losing at trial. Millard testified that he refused to sign Furniss' document, that he felt uncomfortable with "how the mediation was going,"

---

[2] By disputing his lawyer's authority to agree to the alleged settlement, Millard has put his communication with his attorney at issue and thus waived attorney-client privilege as to communications about settlement. *Shapo v. Tires 'N Tracks, Inc.*, 782 N.E.2d 813, 819 (Ill. App. 1st Dist. 2002). Neither party has asserted privilege under the Uniform Mediation Act, 710 Ill. Comp. Stat. 35/1 *et seq.*, regarding communications during the mediation before former Judge Durkin.

and that he "did not want to be there." By the end of the conference, the parties were unable to reach an agreement.

Nonetheless, Furniss testified that Millard communicated to him at the settlement conference that Millard would accept an agreement with BNSF for $80,000.[3] Furniss believed he was armed with authority to settle for $80,000. After Millard left the conference, Furniss spoke with BNSF attorneys Prendergast and Mohan at the elevators outside Judge Schenkier's chambers. Furniss explained to them that Millard was "stuck" on $80,000 and that BNSF should either pay that amount or expect to be on trial within a couple of weeks.

Mohan's testimony was consistent with Furniss.' He recalled that Millard's last demand at the settlement conference before Judge Schenkier was $90,000, and that BNSF's last offer was $60,000. He also recalled that Judge Schenkier had recommended $65,000. (It is not clear whether BNSF agreed to that recommendation.) Mohan recalled Millard leaving the settlement conference and Furniss saying to BNSF's attorneys, "He's stuck on $80,000."

BNSF did not immediately agree to the amount of $80,000, so both parties continued to prepare for trial. Two days after the conference, on the morning of February 10, 2010, BNSF's attorneys contacted Furniss and agreed to the settlement demand of $80,000. Because of the impending trial, the lawyers called the court to report their settlement, and a status hearing was set for later that afternoon. At that hearing, lawyers for both parties announced on the record that they

---

[3] At the evidentiary hearing, Prendergast asked Furniss on direct examination, "In the course of your discussions with Mr. Millard that day [February 8, 2010], did he indicate to you that he would accept $80,000 to settle the case?" Furniss responded "That's what he told me." On cross-examination, Furniss addressed the issue again when Millard asked him, "In between communications in the first mediation and to the end of the second mediation, did I communicate to you through e-mail or verbally that I would settle for less than $150,000?" Furniss answered "Well, verbally, you informed me at the settlement conference that you would accept $80,000."

had finally arrived at a settlement agreement, although Furniss unexpectedly raised one wrinkle: his client was now "balking" at the settlement he had agreed to. (Def.'s Mot., Ex. A, Tr. Feb. 10, 2010 at 4.)

In the two days between the settlement conference of February 8 and the call to the court on February 10, there was minimal communication between Millard and Furniss, consisting of only two e-mails, neither of which contained any discussion of the settlement.[4] The first was sent by Millard on February 9, 2010, stating "if u [sic] need anything from me please e-mail me, don't call." (Pl.'s Resp., Ex. A.) In the second e-mail later that day, February 9, Furniss simply notified Millard of a schedule change in a court hearing later that week. (*Id.*, Ex. E.) Based on that limited contact, Furniss believed the authority he received on February 8, 2010 to settle for $80,000 had never been revoked.

After Furniss reached a settlement agreement with BNSF on the morning of February 10, he e-mailed Millard stating, "I attempted to call you earlier to congratulate you on getting your case done. The BNSF called this morning and agreed to pay your demand of $80,000 to settle your case." (*Id.*, Ex. B.) Millard testified that, following the settlement conference, this was the first he had heard of any attempt to settle for $80,000. He also claims to have responded to Furniss' e-mail by asking "What is this for?" and stating, "I do not want to settle for it."

In a response e-mail, Furniss reminded Millard that Millard had told him and Judge Schenkier at the settlement conference that he would accept $80,000 to settle the case. (*Id.*, Ex. D.) But Millard still refused the $80,000 settlement. Two weeks later, on February 26, 2010, Furniss

---

[4] Attached to Millard's response to the motion are copies of his e-mail exchanges with Furniss.

forwarded Millard a settlement agreement drafted by BNSF. (*Id.*, Ex. E.) Once again, Millard rejected the agreement. (*Id.*, Ex. E.) On April 8, 2010, BNSF filed the present motion.

Millard testified that the only communication between he and Furniss about settlement was through e-mail, and that in those e-mails Millard stated he would "only settle for $150,000 or more." Millard said he was "uncomfortable" at the settlement conference, but, except for the testimony described in the preceding sentence, did not directly contradict or deny Furniss' testimony that he (Millard) had communicated authority at the settlement conference to settle for $80,000 and that he had never revoked that authority until after BNSF had agreed to pay that amount.

## LEGAL PRINCIPLES

A settlement agreement is a contract and, as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contacts generally. *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (citing *Air Line Stewards and Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983)). A lawyer's authority to represent a client in litigation does not involve authority to compromise or settle the lawsuit; rather, the attorney must receive the client's express authority to settle. *Brewer v. Natl. R.R. Passenger Corp.*, 649 N.E.2d 1331, 1333-34 (Ill. 1995). Where a settlement is made out of court and is not made a part of the judgment, the client will not be bound by the agreement without proof of express authority. *Shapo*, 782 N.E.2d. at 823. Under those circumstances, authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact. *Id.* at 823-24 (citing *Danziger v. Pittsfield Shoe Co.*, 68 N.E. 534 (Ill. 1903)). Where a settlement occurs in court, however, the attorney's authority to settle is presumed unless rebutted by affirmative

evidence that authority is lacking. *Id.* at 824 (citing *Szymkowski v. Szymkowski*, 432 N.E.2d 1209 (Ill. 1982)). Under Illinois law, an oral settlement agreement is enforceable "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995) (citation omitted). Illinois law follows the objective theory of intent; whether the parties had a "meeting of the minds" is determined not by their actual subjective intent, as in their actual mental processes, but by what they expressed to each other. *Laserage Tech. Corp.,* 972 F.2d at 802. Under Illinois law, "[a] contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.'" *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991) (citation omitted).

A client may revoke authority to settle, but such revocation has prospective effect only. *Restatement (Third) of the Law Governing Lawyers* § 22 cmt. c (2000). Once a valid settlement agreement has been made, buyer's remorse will not render the agreement unenforceable. "[A] mere change of mind is not sufficient grounds for setting aside a settlement agreement." *Porter v. Chicago Bd. of Educ.*, 981 F. Supp. 1129, 1132 (N.D. Ill. 1997) (citation omitted). As the Seventh Circuit has stated, "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient . . . . If a party to a . . . suit who has previously authorized a settlement changes his mind . . . , that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (citations omitted). Moreover, "[p]ost-acceptance conduct does not retract an earlier acceptance." *Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010).

# DISCUSSION

## A. Settlement Authority

The primary issue here is whether Millard's attorney Furniss had authority to communicate a settlement demand of $80,000 to BNSF on February 8, 2010 and, if so, whether that authority was revoked before BNSF's acceptance. Because both the demand and the acceptance were made off the record and outside the presence of the court (Furniss made the demand of $80,000 at the elevators outside Judge Schenkier's chambers after the settlement conference, and BNSF accepted that demand in a private telephone call with Furniss), BNSF has the burden of proving that Furniss had express authority from Millard to settle for $80,000. *Shapo*, 782 N.E.2d at 823-24.

At the evidentiary hearing, BNSF offered Furniss' testimony that Millard had verbally given him authority to settle the case for $80,000 on February 8, 2010. Furniss' testimony, which was consistent with Mohan's, was very credible and supported by undisputed facts. It is undisputed that $80,000 was Millard's last demand at the mediation before former Judge Durkin. At the settlement conference before Judge Schenkier, the last demand Millard expressed to BNSF was $90,000 -- a higher figure, but that was against BNSF's last expressed offer of $60,000. A $90,000 demand would have given Millard room to reduce his demand if BNSF had come up to, for example, $70,000. Both Furniss and Millard described a rather heated discussion between them in which Millard rebuffed Furniss' effort to get him to accept Judge Schenkier's recommendation of $65,000. At the end of the discussion, Millard left abruptly, and a frustrated Furniss told BNSF's attorneys that Millard was "stuck on $80,000" and that BNSF had to pay $80,000 or go to trial. There is no reason why Furniss would state the figure of "$80,000" unless he had direction from Millard to do

so. If Furniss were going to invent a figure, common sense suggests it would have been something that BNSF would have been more likely to accept, not the $80,000 demand that BNSF had already rejected at the mediation and that was substantially more than Judge Schenkier's recommendation. This sequence supports Furniss' testimony that $80,000 was Millard's number, not some invention by Furniss.

Furniss also testified that Millard had not revoked that authority before BNSF agreed to the demand. There is no evidence that Millard revoked that instruction to his lawyer at any time after the settlement conference and before BNSF's acceptance.

Notably, at the evidentiary hearing Millard did not contradict Furniss' testimony that Millard had authorized a settlement for $80,000 on February 8, 2010. Instead, while not expressly denying Furniss' version, Millard testified that he communicated with Furniss regarding settlement only through e-mail, and that he always made it clear he would only accept a settlement offer of $150,000. There are two problems with Millard's testimony. First, it is undisputed that Millard was present at the mediation and the settlement conference at which Furniss stated Millard's demands as $80,000 and $90,000 respectively, without any objection by Millard. Second, it is implausible that Millard never spoke with Furniss about settlement. Millard attended both a settlement conference and a mediation with his attorney, each of which aimed to settle the case. It is just not credible that at those meetings Furniss and Millard failed to discuss settlement figures or terms of agreement.

The court finds that Furniss had specific authority to make a settlement demand of $80,000 on February 8, 2010, and that Millard never revoked the authority prior to the time that BNSF accepted the demand. Accordingly, Furniss continued to possess authority on February 10, 2010 to

settle for $80,000, allowing him to reach a valid settlement agreement on Millard's behalf with BNSF.

B.     **Enforceable Settlement Agreement**

Even with Furniss' settlement authority established, enforcing the agreement requires that there have been a "meeting of the minds" and that the terms of the contract be "sufficiently definite and certain" so that a court may "ascertain what the parties have agreed to do." *Wilson*, 46 F.3d at 666, 667 (citation omitted); *Cheever*, 578 N.E.2d at 983. Here, there appears to be no dispute about the terms of the agreement. At the time Furniss made the settlement demand of $80,000 on February 8, 2010, attorneys for each party understood that any agreement would be for a gross amount, inclusive of costs and attorney's fees. In the proposed release and settlement agreement drafted by BNSF and sent by Furniss to Millard, Millard agrees to release BNSF from all claims, including his claim that BNSF interfered with his right to take leave under FMLA, up to his reinstatement on April 8, 2008. (Def.'s Mot., Ex. B.) Millard was subsequently terminated for a matter not involved in this lawsuit, and any claims arising from that event are not released. While Millard takes issue with the amount of settlement, nowhere in his response to BNSF's motion does he dispute any other terms or conditions of the agreement. The court finds that the parties had a meeting of the minds as to the material terms of the agreement, and that the agreement is sufficiently definite. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999); *Cheever*, 578 N.E.2d at 983.

Because the parties agreed to the material terms of the agreement, which are sufficiently clear, and Furniss possessed authority to settle on Millard's behalf for $80,000 at the time of the agreement, the court concludes that Millard entered into a binding settlement agreement with BNSF

for $80,000. Millard's preference for a larger amount once BNSF agreed to pay the amount he had demanded does not make the agreement unenforceable. "A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient." *Glass*, 788 F.2d at 454-55.

**CONCLUSION**

For the foregoing reasons, BNSF's Motion to Enforce Settlement Agreement is granted. This case is dismissed with prejudice pursuant to the settlement.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

August 31, 2010